# EXHIBIT A

L3BLANDC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   IMARI ANDREWS, individually
     and on behalf of all others
 4   similarly situated,

 5              Plaintiffs,          20 Civ.04521 (VSB)

 6        v.

 7   RITE AID CORPORATION and RITE
     AID OF NEW YORK, INC.,
 8                                   Teleconference
                Defendant.
 9
     ------------------------------x
10                                   New York, N.Y.
                                     March 11, 20121
11                                   11:00 p.m.

12   Before:

13              HON. VERNON S. BRODERICK,

14                                   District Judge

15                   APPEARANCES

16   FITAPELLI & SCHAFFER LLP
            Attorney for Plaintiff
17   BY:  BRIAN SCOTT SCHAFFER

18   LITTLER MENDELSON, P.C.
            Attorneys for Defendants
19   BY:  ELI ZEV FREEDBERG
          MIGUEL ANGEL LOPEZ
20

21

22

23

24

25
```

L3BLANDC

1    THE COURT:  Hi.  This is Judge Broderick.

2    MR. SCHAFFER:  Good morning, your Honor.

3    THE COURT:  Good morning.

4    Before we get started, I just want to confirm that we

5    have all the parties on the line.

6    Is plaintiff's counsel on the line?

7    MR. SCHAFFER:  Yes, your Honor.

8    Brian Schaeffer, from Fitapelli & Schaffer.

9    MR. BENHARRIS:  Good morning, your Honor.

10   Hunter Benharris from Fitapelli & Schaffer as well.

11   THE COURT:  And is defense counsel on the line?

12   MR. FREEDBERG:  Yes, your Honor.  This is Eli

13   Freedberg, from Littler Mendelson, for defendants.

14   Miguel, are you there?

15   MR. LOPEZ:  And Miguel Lopez, also from Littler

16   Mendelson, for defendants.

17   THE COURT:  Okay.  Good morning, Ms. Smith.  Thank

18   you.

19   Okay.  If we could go on the record.  And if I could

20   ask counsel, beginning with counsel for the plaintiff, to

21   introduce themselves for the record.  And please remember after

22   you introduce yourself that when do you speak during the

23   pendency of the conference, please identify yourself by name so

24   that we can make sure that we have an accurate record.  Also, I

25   would ask that any counsel who is not speaking, I'd ask you to

L3BLANDC

1   please try and mute your phone to eliminate background noise so

2   we can make sure Ms. Smith, our court reporter, can hear the

3   folks who are speaking.

4           Okay.  First, plaintiff's counsel?

5           MR. SCHAFFER:  Brian Schaffer of Fitapelli & Schaffer,

6   for plaintiff.

7           MR. BENHARRIS:  Hunter Benharris from Fitapelli &

8   Schaffer, for plaintiff.

9           THE COURT:  For the defense?

10          MR. FREEDBERG:  Eli Freedberg from Littler Mendelson,

11  for defendants.

12          MR. LOPEZ:  And Miguel Lopez of Littler Mendelson,

13  also for defendants.

14          THE COURT:  Okay.  All right.  Thank you.

15          So, currently before me is a motion to dismiss.  So I

16  have several questions for the parties.  And then I will allow

17  either side, if you have anything to add, to add whatever you

18  deem is appropriate.  Let me ask first of plaintiff's counsel:

19          Is there any evidence either before me -- well, first

20  before me -- that shows that following the March 21st, 2020,

21  pay period, that the defendants failed to factor in the bonus

22  into the plaintiff's overtime?

23          MR. SCHAFFER:  This is Brian Schaffer.

24          What defendant provided was essentially one subsequent

25  pay period that appeared to show that plaintiff was properly

L3BLANDC

1  paid overtime.  I believe it was the pay period following the

2  initial, where the plaintiff was not properly timely paid the

3  overtime.  As for the paystubs or pay period after that,

4  plaintiff doesn't have the paystubs in his possession, and

5  defendant has not attached those paystubs.  So I think, from

6  plaintiff's perspective, it's unclear.

7          THE COURT:  Well, let me ask a followup question.  In

8  connection with the motion to dismiss, am I correct -- well,

9  did plaintiff submit a declaration or an affidavit stating that

10  for the periods after the March 21st, 2020, pay period, that

11  for those pay periods either that he wasn't compensated --

12  excuse me, that the defendant failed to factor in the bonus

13  into his overtime?

14          MR. SCHAFFER:  No.  Plaintiffs did not submit an

15  affidavit stating such.

16          THE COURT:  Okay.  So as I understand it by way of

17  example in the complaint, there was an indication that for the

18  pay period, that March 21st pay period, there was an indication

19  by the calculation that the Hero bonus -- for lack of a better

20  term -- or Hero pay was not calculated as part of the bonus.

21          Is that an accurate statement with regard to the

22  statements in the complaint?

23          MR. SCHAFFER:  Yes, that is correct, your Honor.

24          THE COURT:  And then as I understand it, defendants

25  submitted the paystub or pay documents for that subsequent pay

L3BLANDC

1    period -- am I correct -- that showed for that pay period that

2    that the differential was, in fact, made up in the next pay

3    period?

4              MR. SCHAFFER:  That would be a correct statement.

5              THE COURT:  Okay.  All right.  Let me ask.  With

6    regard to that March pay period and the subsequent pay period

7    that the bonus was made up -- so is the injury that plaintiff

8    is alleging -- and, again, with regard to that specific pay

9    period, is it that plaintiff wasn't promptly paid the overtime

10   payment; in other words, wasn't paid the overtime during the

11   pay period that the overtime was actually worked?

12             MR. SCHAFFER:  Yes, that's correct, your Honor.

13             The allegation is that under 29CFR778.106 the overtime

14   needs to be paid concurrent with the pay period in which the

15   overtime is worked.

16             THE COURT:  Okay.  All right.  Let me ask the

17   defendant's counsel a question.

18             With regard to the Hero Pay bonus and the delay, is

19   there any materials currently before me indicating or

20   demonstrating what caused the delay of that payment?

21             MR. FREEDBERG:  Sorry, your Honor.  This is Eli

22   Freedberg.  I didn't mean to cut you off.

23             THE COURT:  No.  Go ahead.  I had completed my

24   question.

25             MR. FREEDBERG:  Yeah.  So, we do have a declaration,

L3BLANDC

1    the Alcovitz declaration, that does explain the reason for the

2    delay.  And the reason was that the Hero Pay bonus was quickly

3    formulated to reward the essential workers who were working

4    during the very beginning of COVID, and that the bonus was

5    implemented mid pay week, and that to get their payroll to

6    essentially process the overtime, it just took time.  So they

7    were able to demonstrate easily through whatever system they

8    had that the base pay, the straight-time pay, was paid, but

9    they took essentially longer to program the system to calculate

10   the overtime based on that differential.

11             THE COURT:  Okay.

12             MR. FREEDBERG:  So they were able to expedite --

13   according to the declaration we submitted, Rite Aid was able to

14   program, and it just took that extra week -- extra few days

15   that carried into that second pay period.

16             THE COURT:  Okay.  And so, administrative back office

17   type things that they needed to adjust in order to have that

18   automatically calculated.

19             First of all, I'll ask, Mr. Freedberg:  Are you aware

20   of any other entities or cases that have been brought where

21   this has been an issue?  And by "this," I'm specifically

22   referring, not as a general matter, to the delay --

23             MR. FREEDBERG:  Hero Pay?

24             THE COURT:  The Hero Pay, exactly.

25             MR. FREEDBERG:  I am not, your Honor, although it's a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

L3BLANDC

1    good question obviously.  I do expect the Hero Pay

2    differentials to be -- and Mr. Schaffer can probably shed more

3    light on this than I can.  But I do expect to see kind of a

4    flood of wage and hour type litigation about Hero Pay, you

5    know, certainly from -- I don't mean to be flippant about it,

6    but, you know, from a defense perspective, it's kind of a no

7    good deed goes unpunished type situation.  But, to answer your

8    specific question, I am not aware of any Hero Pay litigation at

9    the moment.  There's certainly no decisions on Hero Pay

10   specific issues.

11           THE COURT:  Okay.  Yeah, that's what I thought.  And

12   without weighing in one way or the other, I would anticipate

13   there will be other formulations or maybe some like this, just

14   simply because there may be entities actually that ended up

15   just not paying it or delayed or whatever it may be.

16           Let me ask:  With regard to the New York Labor Law

17   Section 191 issue, is there any case law that you can point to

18   or that's in your papers that the private right of action

19   issued under that section is an unsettled issue on state law

20   that federal courts should not exercise supplemental

21   jurisdiction over?

22           MR. FREEDBERG:  Eli Freedberg.

23           So, in our reply, we cited to -- well, in terms of the

24   supplemental jurisdiction question, your Honor, I am not aware

25   of any cases addressing the supplemental jurisdiction question.

L3BLANDC

1    I am aware of cases -- and this is not entirely responsive to

2    your Honor's question, so if you want me to stop I will.  But

3    the state of *Vega* of whether there is a private right of action

4    is certainly unsettled.  And we've cited in our papers a number

5    of cases to that effect.  And I'll refer your Honor to the

6    *Kruty v. Max Finkelstein* cases and *Gardner v D&D Electrical*

7    *Construction Company* cases that are in our papers.

8            I want to be very clear though that -- and I think

9    your Honor caught on to this.  But I do want to emphasize that

10   we are not in this motion arguing the private right of action

11   issue that has been, you know, hotly contested and hotly

12   litigated throughout state courts and federal courts at this

13   time.  We're also not arguing in this motion the measure of

14   damages.  For example, plaintiffs are seeking liquidated

15   damages for every late payment under Section 198 of the labor

16   law.  That's not the issue we're putting forth in this motion.

17   We took what we frankly think is a novel approach -- and this

18   does get to your Honor's question about whether the Court has

19   jurisdiction to hear this burgeoning novel issue, however you

20   want to characterize it.  And frankly the attenuation of this

21   claim to an FLSA overtime claim that plaintiff may or may not

22   have standing to assert, I have never seen that argued before,

23   and to my knowledge, that would be a case of first impression

24   for this Court.  So that's the answer to your Honor's question.

25   I'm sorry that was a long-winded way of responding.

L3BLANDC

1          THE COURT:  No.  That's fine.  So let me ask.  And

2     since it's, Mr. Freedberg, defendant's motion, I'll give you

3     the opportunity to expand or emphasize any arguments that

4     you've already made with regard to your motion.

5          MR. FREEDBERG:  Yes.  So, I don't know if your Honor

6     -- I don't want to rehash what we've already contained in the

7     papers, but the way I see it, plaintiff is essentially

8     asserting jurisdiction over the state-law claims, which, again,

9     I think really bears emphasizing is 99.999 percent of the

10    potential damages in this case.  I don't think that's a

11    mischaracterization.  I think Mr. Schaffer would agree with me

12    that the state-law claims immensely outweigh the value of the

13    FLSA claim -- either FLSA overtime claim where they're really

14    complaining about how one week of pay was treated -- that

15    plaintiffs are seeking the Court to exercise jurisdiction over

16    those claims in two ways:  First, being CAFA, and second under

17    a supplemental jurisdiction theory.  And in my view, plaintiff

18    has essentially conceded that the local controversy exception

19    under CAFA applies here.  They don't dispute the primary

20    factors.  The only factor they really seem to dispute is

21    whether -- the final factor in the local controversy exception,

22    whether Rite Aid has been subject to a class action in the last

23    three years.  And in support of that claim that there has been,

24    and thus local controversy doesn't apply, plaintiff cites three

25    cases, one of which, *Wilson*, is not a class action anyway.

1          The other two cases that they cite to are California

2     class actions that, to my knowledge, I don't think even name

3     the primary defendant here, which is Rite Aid of New York

4     Incorporated.  And those claims are putative class actions.  I

5     don't think they've been certified yet.  They're putative class

6     actions that do not assert any of the claims or any of the

7     facts that are present here.  Those claims are brought under

8     California law.  And the factual predicate to those claims,

9     both two remaining claims that plaintiff cite to, are that in

10    California Rite Aid had a policy that before employees leave

11    the store, they have to submit to a security search of their

12    bags and the time spent undergoing that search wasn't

13    compensable and thus plaintiffs weren't paid all the wages that

14    they were entitled to under California law.  Those claims do

15    not appear in this action at all, so they're not related in any

16    way to the claim here, which, again, the primary claim is that

17    under New York law, Rite Aid failed to pay alleged manual

18    workers on a weekly basis.

19          In other words -- I guess in conclusion -- the claims

20    here are completely different to the claims asserted in the

21    California actions that plaintiff cited to, and thus, the

22    exception -- thus, this falls squarely within the local

23    controversy exception.  So I think, in my view anyway, it seems

24    pretty clear that CAFA is inapplicable.  We fall clearly within

25    the purview of the local controversy exception.  And CAFA

L3BLANDC

1   cannot serve as a basis for exercising jurisdiction, at least

2   over the state claims that plaintiffs bring.

3          Now, if we're correct, and CAFA doesn't apply, then

4   the only basis that a federal court could have to exercise

5   jurisdiction over the state claims would be under a

6   supplemental jurisdiction type theory.  But, again, that fails

7   for a myriad of reasons, most of which is that supplemental

8   jurisdiction is really appropriate only when the nexus and the

9   factual underpinnings of the state law claims arise out of the

10  same facts and underpinnings that give rise to the federal

11  claims.

12         Now, here, the federal claim is solely, as we

13  discussed at the beginning of the call:  Did Rite Aid properly

14  count the Hero Pay in its overtime calculation for that one

15  week?  And, you know, as we believe we set forth in the papers,

16  we did -- Rite Aid did.  But even putting that issue aside,

17  that's it.  That's their federal claim hook here that gives

18  them federal jurisdiction over the federal claims.  The state

19  law claims, other than the state overtime claim, which we would

20  concede there could be supplemental jurisdiction over the New

21  York labor law overtime claim, but the rate of pay notice

22  claim, the wage statement, and most importantly, the weekly pay

23  claim arises completely out of a different set of facts and

24  circumstances that makes supplemental jurisdiction over those

25  claims particularly inappropriate.  And that's only buttressed

1    by the fact that, as I touched on earlier, the state of the

2    manual law claims are -- despite what plaintiffs want to say,

3    it really is influx.  This changed -- you know, up until two

4    years ago, there was virtually no -- not virtually, there was

5    no doubt that there was no private right of action.  That

6    changed with an intermediate appellate court decision, that

7    this issue has not arisen to the New York state Court of

8    Appeals.  That needs to happen in my view.  And as a result, I

9    think that counsels the Court to not exercise jurisdiction over

10   the manual worker claims, because these the should go through

11   the New York state court system and work its way up to

12   ultimately the New York state Court of Appeals.

13          In addition, I would add that -- and it bears noting,

14   the weight -- you put these claims on scales, and the manual

15   worker claim is without -- I think plaintiffs would tell you,

16   it's a hundred-million-dollar claim.  Because, really what

17   they're seeking is liquidated damages for ever hourly worker

18   who worked at a Rite Aid location in New York state going back

19   the full six-year statute of limitations claim.  That's half of

20   the payroll for six years.  I mean, it's truly an enormous

21   claim.  And the federal overtime claim, which is based on one

22   week and is a limited amount of time -- and not every Rite Aid

23   employee necessarily worked overtime that week -- it's

24   minuscule, it's microscopic in comparison to the claim.  And

25   you weigh those.  And the state claims really should be held

L3BLANDC

1    and decided in state court.  So for those reasons -- I think we

2    expressed this in our papers as well.  But for these reasons,

3    we don't think the Court should exercise supplemental

4    jurisdiction either, and at most, keep the federal -- you know,

5    keep the federal overtime claim here where we are.  We can

6    certainly adjudicate that.  And if we need to litigate

7    whether -- you know, making up the overtime pay and the

8    subsequent pay period is compliant with FLSA, we could do that

9    here.  And certainly we'd bootstrap the New York labor law

10   claim here.  But there really is no ground for the Court to

11   exercise supplemental jurisdiction over the remaining claims,

12   because, again, they arise out of totally separate factual

13   nexus and circumstances.

14        The last thing I will say -- and I know I'm going on

15   for a while, and I appreciate the opportunity, your Honor -- is

16   even if the Court does keep the federal overtime claims in

17   federal court, we would ask that under *Bristol Meyers Squibb*

18   decision from the Supreme Court, that the Court strike or

19   dismiss the collective claim seeking a nationwide collective.

20   This is also -- I mean, in my view, this motion presents a

21   bunch of novel questions where there isn't a whole lot of

22   precedent.  In our view, the tide seems to be turning and

23   breaking in our favor where *Bristol Meyers Squibb* is being

24   applied to the FLSA collective action context.  I would

25   certainly urge the Court to adopt that approach and to be swept

L3BLANDC

1   up by that tide, so to speak.  The only arguments really

2   against doing that are policy arguments.  And I think Judge

3   Moses in her decision really, really attacked that argument

4   well.  And I'm just trying to pull out the quote that she had

5   that I think is worth repeating.  Just give me a quick second

6   while I take a few minutes to find it.

7        (Pause)

8        MR. FREEDBERG:  I'm sorry.  The case that I'm

9   referring to in Judge Moses' decision is *Pettenato v. Beacon*

10  *Health Options*, 425 F.Supp. 3d 264, where she dismisses the

11  policy arguments to not apply *Bristol Meyers Squibb*.  And the

12  argument goes:  Nothing in the FLSA that prohibits nationwide

13  collective actions and, you know, FLSA is supposed to be

14  remedial and to protect employees robustly, and precluding

15  nation wide collective actions would in some ways defeat that.

16  But Judge Moses noted that the Court's obligation to follow the

17  law cannot be overshadowed by even the most compelling policy

18  arguments.  And I think Judge Moses is spot on in that.  And

19  also, she goes on to note correctly that in her case -- in

20  *Pettenato* -- plaintiff's policy concerns are somewhat

21  overstated.  And she writes:

22        "Applying *Bristol Meyers* to FLSA collective action

23  will not prevent a nationwide FLSA collective of plaintiffs

24  from joining together in a consolidated action in a state that

25  has general jurisdiction over Beacon Health."

L3BLANDC

1      So what judge Moses means there is if plaintiff sued

2  Rite Aid Corporation in the state in which either its

3  headquartered or incorporated in -- which here, it's Delaware

4  and Pennsylvania -- there, they could seek nationwide

5  collective action.  Rite Aid Corporation is not domiciled or

6  incorporated in New York, so for that reason, *Bristol Meyers*

7  *Squibb* does apply here and it should preclude a nationwide

8  collective.

9      So with that, I think I conclude.  And, again, I thank

10  you for hearing me out, your Honor.

11      THE COURT:  Okay.  Thank you.

12      Mr. Schaffer, do you have any response to what Mr.

13  Freedberg said or is there anything you'd like to add to your

14  papers or emphasize in your papers opposing defendant's motion?

15      MR. SCHAFFER:  Sure.  This is Brian Schaffer.  And

16  thank you, your Honor, for the opportunity to be heard as well.

17      I think it's clear that this Court should have

18  jurisdiction certainly under the overtime claim under the FLSA

19  and New York labor law.  I understand that defendant quickly

20  implemented this Hero Pay policy; however, it was quite simple

21  in that people were provided two dollars an hour extra and,

22  thus, the overtime rate would be literally one dollar if you

23  factor into the regular rate.  So I think under 29CFR778.209

24  there would be no difficulty in computing the overtime pay and,

25  thus, there's no excuse for it to be late, and, thus, it would

```
1    be a, you know, valid claim that plaintiffs would bring.

2             And we cited to many cases where courts have stated

3    that summary judgment is not proper on such a claim because

4    essentially there are issues of fact as to the cause of the

5    improper delay.  And a case that, you know, I would point the

6    Court to in response would be Montero v. JPMorgan,

7    2017 WL 1425611, which is in addition to the cases that we

8    cited in our opposition.

9             In terms of the Court's jurisdiction over the labor

10   law 191 claim, this is a new hot-button issue, as defense

11   counsel has correctly pointed out.  But I can say, your Honor,

12   to my knowledge in terms of the cases that are currently being

13   litigated under 191 in the Southern and Eastern district,

14   either there was no underlying FLSA claim or there's CAFA

15   jurisdiction.  And as far as I am aware -- and I'm aware of

16   most of these cases -- no court has stated that there's no

17   supplemental jurisdiction over the 191 claim.

18            To address supplemental jurisdiction first, the Smith

19   & Wollensky case states that the state law claim has to rise

20   from the same common nucleus of operative facts.  I think here,

21   I mean, the paystub is at issue.  And the paystub admittedly

22   was a biweekly paystub.  And we attached the paystub to the

23   complaint to show that the overtime wasn't paid properly under

24   the Hero Pay.  And we established that.  That same paystub

25   could be used to show that hourly manual workers, such as
```

L3BLANDC

1    plaintiff, were not timely paid and that they were not paid

2    seven days after the work was performed.

3         The only issue that the Court would need to address

4    essentially separate from the frequency of pay are these

5    individual manual workers.  And we're talking about individuals

6    that worked in the retail stores as security guards, cashiers,

7    stock people and the like.  So I don't think an exorbitant

8    amount of discovery would be needed to find out if they were

9    actually performing manual work more than 25 percent of their

10   time.

11        As to CAFA, you know, the local controversy, I

12   think -- you know, we point to a case, *Carter v. CIOX* in the

13   Western District.  That's 260 F.Supp.3d 277.  And the court

14   there in the Western District in 2017 held that the local

15   controversy did not apply because the class action alleging

16   violations of New York's medical record law is similar to class

17   actions brought against defendants under similar laws of other

18   states in the past three years.  Our papers cited to a few

19   California class actions.  These are cases that in the three

20   years arose under the California labor code and were for unpaid

21   overtime and improper wage statements.  Here, two of the causes

22   of action are improper failure to pay overtime and improper

23   wage statements that's under New York Labor Law 195(3).  So I

24   think we can get over the local controversy exemption.

25        In addition, I just want to point out to the Court

L3BLANDC

1    that under CAFA, the defendant has the sole burden of

2    establishing an exemption.  And I think certainly, you know,

3    discovery, at minimum, would have to take place regarding those

4    other California state class actions to see if they were, in

5    fact, related enough to defeat the local controversy exemption.

6    And we didn't touch on the home state controversy, but,

7    your Honor, I think our papers sufficiently establish that Rite

8    Aid Corporation is the corporate parent, that all moneys flow

9    through Rite Aid Corporation.  Rite Aid Corporation has the

10   same CEO as New York.  Plaintiff's paystub, which was

11   allegedly, you know, on behalf of Rite Aid New York lists the

12   Pennsylvania address of Rite Aid on the paystub as well.  And I

13   think it's clear that Rite Aid of New York -- I'm sorry, Rite

14   Aid Corporation was a primary defendant.  So I think there are

15   three ways to get jurisdiction and I think the Court should

16   certainly exercise that jurisdiction over the 191 claims.

17        I guess lastly, defendant addressed *Bristol Meyers*.

18   We all know that, you know, district courts go both ways on

19   *Bristol Meyers*.  And, you know, as our papers state, we don't

20   believe that *Pettenato* is on the right side of this.  And we

21   point to cases from around the country in addition to cases in

22   the Eastern District, the *Lane Bryant* and *Lumber Liquidators*

23   cases, which follow the line of reasoning, which is *Bristol*

24   *Meyers* was a state claim in state court.  Here, we're talking

25   about federal claims in federal court.  And those were

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    individual mass torts, you know, against a drug company.  Here,
2    we're talking about unpaid wages.  And the Supreme Court
3    recently held the in *Tyson Foods* that in an FLSA or Rule 23
4    class action, representative discovery is the proper way to
5    adjudicate a class or collective action at a trial level.  And
6    defendant cited some cases saying that that's not true and
7    discovery is able to be taken of ever plaintiff in a collective
8    action.  That is not true, your Honor.  Every collective action
9    I've ever handled -- and it's been many -- either the parties
10   agree or the court orders some sort of representative
11   discovery.  It could be, you know, five percent, ten percent of
12   the collective or something like that.  I've never seen a case
13   involving hundreds of thousands of opt-ins where the court says
14   every plaintiff must be subject to discovery and every
15   plaintiff must appear for trial.  That would be contrary to the
16   policy of 216(b) and Rule 23.

17          And I think it's also -- you know in terms of policy,
18   defendants saying that the only way that essentially to have
19   jurisdiction over them for a nationwide case is to file in
20   Pennsylvania or Delaware, which is where Rite Aid Corporation
21   is domiciled and their principal place of business, I mean,
22   what defendant is saying, seriously, is that we can file 18
23   separate class and collective actions in the 18 states which
24   Rite Aid does business, and they wouldn't -- it doesn't make
25   sense, because certainly defendant would want to consolidate

1    those 18 cases.  Here, for judicial economy, we're proposing

2    that all 18 presumably, you know, are controlled by this case

3    and your Honor.  And I'd also point out that *Bristol Meyers* I

4    think is very premature.  Cases have dismissed the *Bristol*

5    *Meyers* argument at this motion stage essentially because right

6    now there are no opt-ins from other states.  So how could the

7    Court really rule on the jurisdiction issue at this time?

8         And lastly, I just want to address that defendants we

9    think addressed completely new arguments in their reply under

10   *Spokeo*, regarding concrete injury.  We did not request a

11   surreply, but briefly we would just point to a case addressing

12   that.  There's a case called *Banta*.  It's 2020 WL 1330744 in

13   the Southern District.  The court ruled that New York Labor Law

14   unpaid uncling wage claims -- specifically even the 195(3)

15   paystub claim presents a concrete injury.  So I think *Spokeo* --

16   you know, essentially the defendant really tried to throw in

17   the kitchen sink here and really wants you to dismiss this

18   case, and I think plaintiffs have provided plenty reasons why

19   this case should not be dismissed right now.  So thank you for

20   your time, your Honor.

21        THE COURT:  Okay.  Thank you very much.

22        What I would propose is the following:  I'd like to

23   review my notes and I'd propose, if we could, to pause for

24   about ten or 15 minutes.  I will come back and it's my hope

25   that I will be able to provide the parties with my decision

L3BLANDC

1    orally.  So first let me ask.  Does that make sense?

2              Mr. Schaffer, does that make sense to you?

3              MR. SCHAFFER:  Yes, your Honor.  That's fine.

4              THE COURT:  Okay.  Mr. Freedberg?

5              MR. FREEDBERG:  Yes.  That's fine with me also,

6    your Honor.

7              THE COURT:  Okay.  All right.  Thank you.  So I'm

8    going to step away for -- I'm going to leave my line open, but

9    I'm going to mute you folks.  But I'm going to step away for a

10   bit and I'll come back.  Let's see, it's 11:39 now.  Why don't

11   we say 11:50?  Okay?

12             MR. FREEDBERG:  Perfect, your Honor.  Thank you.

13             THE COURT:  All right.  Thank you.

14             (Recess)

15             THE COURT:  This is Judge Broderick.

16             Is plaintiff's counsel on the line?

17             MR. SCHAFFER:  Yes.  Brian Schaffer here, your Honor.

18             THE COURT:  Is defense counsel on the line?

19             MR. FREEDBERG:  This is Eli Freedberg.  Yes, present.

20             THE COURT:  And do we have the court reporter on the

21   line?  Okay.  Thank you.

22             Okay.  I'm prepared to issue my decision.  Now, having

23   heard the parties, I make the following findings and the

24   following is my decision:

25             Plaintiff, Imari Andrews, brings a nationwide

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

L3BLANDC

1    collective under the Fair Labor Standards Act, FLSA, on behalf
2    of himself and all others similarly situated hourly workers who
3    have worked for Rite Aid of New York, Inc. and Rite Aid
4    Corporation -- collectively I'll refer to them as "Rite Aid" or
5    "defendants."

6         Plaintiff alleges that defendants failed to properly
7    compensate him and the FLSA collective for their overtime hours
8    worked.  Additionally, plaintiff brings a putative class action
9    pursuant to Federal Rule of Civil Procedure 23, on behalf of
10   himself and all other similarly situated hourly workers in New
11   York, alleging violations of the New York Labor Law.  And
12   that's Article 6, Section 190.

13        I'll refer to this group as "the New York
14   class."Plaintiff alleges that defendant failed to properly pay
15   him under the New York class overtime wages, failed to timely
16   pay wages, in violation of New York Labor Law, Section
17   191(1)(A); failed to provide proper time of higher wage
18   notices, and failed to supply accurate statements of wages with
19   every payment.

20        For purposes of deciding defendants' motion to
21   dismiss, I only cite and discuss the specific allegations in
22   plaintiff's complaint that are relevant to my resolution of
23   defendant's motion.  Plaintiff, a New York resident, was
24   employed at various Rite Aid stores in New York as an hourly
25   worker from about January 8th, 2020, until May 29th, 2020.

L3BLANDC

1    Plaintiff alleges during his employment he frequently worked

2    over 40 hours per week, and in weeks where he did so and earned

3    bonus pay, defendants failed to calculate the overtime rate,

4    including hourly bonus pay, in violation of FLSA.  He alleges

5    that, for example, for the pay period March 15th, 2020, to

6    March 21st, 2020, plaintiff worked two hours and 58 minutes of

7    overtime and earned bonus pay, but that overtime he was paid of

8    $25.50 per hour failed to account for the bonus pay he earned.

9    Plaintiff attaches his paystub from that time period as Exhibit

10   A.  I will refer to this as "the March 8th to March 21st

11   paystub."

12           Additionally, plaintiff alleges that because he spent

13   more than 25 percent of his shift performing physical tasks, he

14   should not have been compensated on a biweekly basis, and that

15   defendants' biweekly compensation violated New York Labor Law,

16   Section 191(1)(A).  He also alleges that defendants failed to

17   provide him with a proper time of higher wage notice and with

18   accurate wage statements with each payment of wages, as

19   required by New York Labor Law.  He alleges that the defendants

20   apply the same employment policies, practices and procedures to

21   all hourly workers in their operation, including policies,

22   practices and procedures with respect to payment of wages, and

23   acted consistent with those policies here.

24           On August 19th, 2020, this case was referred to

25   mediation.  On August 31st, 2020, defendants filed a motion to

1   dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1)

2   and 12(b)(2).  Because the motion raised jurisdictional issues,

3   mediation was adjourned *sine die*.  On October 15th, 2020,

4   plaintiff filed a motion in opposition to defendant's motion to

5   dismiss.  On November 5th, 2020, defendants filed a reply in

6   support of their motion to dismiss.  Subsequently, both parties

7   have filed supplemental authority and responses to the

8   supplemental authority, filed by the opposing party.

9          Now, with regard to the legal standard here, a claim

10  may be "properly dismissed for lack of subject matter

11  jurisdiction under Rule 12(b)(1) when the district court lacks

12  the statutory or constitutional power to adjudicate it."

13  *Makarova vs. United States*, 201 F.3d 110 at 113.  In deciding a

14  Rule 12(b)(1) motion to dismiss "the district court must take

15  all uncontroverted facts in the complaint as true and draw all

16  reasonable inferences in favor of the party asserting

17  jurisdiction."  I'm citing *Tandon v. Captain's Cove Marina*, 752

18  F.3d, 239 at 243.  Article III of the Constitution circumscribe

19  the Court's authority to hear cases, limiting the jurisdiction

20  of federal courts to cases or controversies.  And I'm citing

21  there Article III, Section (2).  To meet the minimum

22  constitutional threshold, a plaintiff must establish "first

23  that it is sustained an injury in fact; second, that the injury

24  was in some sense caused by the opponent's action or omission;

25  and finally, that a favorable resolution of the case is likely

L3BLANDC

1  to regress the injury."  Citing *Cortlandt v. Hellas*
2  *Telecommunications*, 790 F.3d, 411 at 417.
3  Now, injury in fact is the first and foremost of these
4  three standing elements.  And I'm citing *Spokeo vs. Robins*, 136
5  Supreme Court 1540 at 1547.  To establish this element, "a
6  plaintiff must show that he or she suffered an invasion of a
7  legally protected interest that is concrete and particularized
8  and actual or imminent, not conjectural or hypothetical." and
9  I'm citing back there *Spokeo*.  To be particularized, an injury
10  "must affect the plaintiff in a personal and individual way."
11  Citing *Spokeo* 1548.  To be concrete, an injury must actually
12  exist.  Again, citing *Spokeo*, same page.  "In resolving a
13  motion to dismiss for lack of subject matter jurisdiction under
14  Rule 12(b)(1), a district court may consider evidence outside
15  the pleadings."  I'm citing *Parker Madison v. Airbnb*, 283
16  F.Supp. 3d 174 at 178.  Supplemental jurisdiction is governed
17  by Title 28 United States Code, Section 1367.  Section 1367
18  subsection (a) provides "except as provided in subsections (b)
19  and (c), or as expressly provided otherwise by federal statute,
20  in any civil action of which the district courts have original
21  jurisdiction, the district courts have supplemental
22  jurisdiction over all other claims that are so related to
23  claims in the action within such original jurisdiction that
24  they form part of the same case or controversy under Article
25  III of the United States Constitution."

L3BLANDC

1          Under subsection (c), a district court may decline to

2     exercise supplemental jurisdiction over a claim under

3     subsection (a) if, one, the claim raises a novel or complex

4     issue of state law; two, the claim substantially predominates

5     over the claim or claims over which the district court has

6     original jurisdiction; three, the district court has dismissed

7     all claims over which it has original jurisdiction; or four, in

8     exceptional circumstances there are other compelling reasons

9     for declining jurisdiction.  And there I'm citing Section

10    1367(c).

11         Now, with regard to FLSA standing, defendants assert

12    that plaintiff lacks standing to pursue his FLSA overtime wage

13    claims because the only bonus pay that plaintiff qualified for

14    during his employment with Rite Aid was under the Hero Pay

15    program, which increased his pay by $2 per hour and that

16    plaintiff was paid the overtime differential for his pay period

17    ending March 21st, 2020, in the following pay period.

18         Additionally, defendants assert that plaintiff's

19    subsequent paychecks through the remaining weeks of his

20    employment all included Hero Pay overtime premium differentials

21    for the overtime he worked during those periods.  In other

22    words, defendants argue that plaintiff "was not deprived of any

23    Hero-Pay-based overtime pay."  And that's in the defendant's

24    memorandum at page six.

25         Now, in support of this argument, defendants submit a

L3BLANDC

1   declaration from Michael Alcovitz, the vice president of HR

2   Business Partnership Organization Effectiveness of Rite Aid

3   Corporation -- and that's the Alcovitz declaration -- as well

4   as plaintiff's wage statements from March 22nd, 2020, to

5   April 4th, 2020, pay period.  I will refer to this wage

6   statement as "the March 22nd to April 4th paystub." I treat

7   defendants' argument as a factual challenge to plaintiff's

8   standing.  And there I'm citing *Marcial v. New Hudson*.  And the

9   citation is 2019 WL 1900336.

10          Now, in these circumstances, I "may consider evidence

11  outside the pleadings, but should not consider any conclusory

12  or hearsay statements including in the evidence."  And I'm

13  citing back to the same case.  And just so we're clear, I'm

14  citing back to *Marcial*.  If the defendant's evidence is

15  immaterial and does not contradict the plausible allegations of

16  standing in the complaint, the plaintiff may rely on

17  allegations in the pleadings.  However, where a defendant

18  provides evidence that controverts material factual allegations

19  of standing in the complaint, the Court must make a factual

20  determination as to the standing related allegations."  Citing

21  back to *Marcial*.

22          Plaintiff responds that defendants are simply making

23  an argument as to the merits of plaintiff's claim and that,

24  even assuming that plaintiff was correctly paid his overtime

25  for the pay period after which he earned bonus pay, this

L3BLANDC

1  payment was not prompt, as required by the FLSA.  Plaintiff

2  also notes that defendants only proffered evidence of a single

3  pay period that they purport represents correct payment and

4  have not proper documentation regarding plaintiff's pay for his

5  entire employment.  As a threshold matter, plaintiff's

6  assertion that defendants are making a merits-based argument is

7  incorrect.  Defendants' argument is that plaintiff cannot meet

8  the injury prong of a standing analysis for a FLSA overtime

9  wages claim because he was paid the overtime wages that he was

10  owed.  "This is a valid argument.  If defendants did not

11  violate the FLSA overtime wage provision, plaintiff could not

12  have suffered the injury he alleges."  And I'm citing *Marcial*.

13  And that's 2019 WL 1900336 at 4.  Based on the record before

14  me, which includes the March 8th to March 21st paystub, the

15  March 22nd to April 4th paystub and the Alcovitz declaration,

16  it appears that the Hero Pay program, which resulted in a

17  temporary pay increase of $2 for workers like plaintiff, was

18  introduced in the middle of a pay period in which plaintiff

19  alleges he was underpaid.  For the 42.96 hours that plaintiff

20  worked between March 15th and March 21st, 2020, plaintiff was

21  paid an additional $2 per hour.  Plaintiff's overtime for that

22  pay period, 2.96 hours, however, was calculated using

23  plaintiff's base pay of $17 per hour, not the $19 per hour from

24  the Hero Pay program.  The difference between what plaintiff

25  was paid and what he should have been paid, considering the

L3BLANDC

1    Hero Pay overtime differential, is $2.96.  Plaintiff was paid

2    the remaining $2.96 in his subsequent paycheck.  The parties do

3    not seem to dispute that plaintiff was owed an additional $2.96

4    in overtime pay for the pay period ended March 21st, 2020.

5    Plaintiff concedes that he was paid $2.96 in the following pay

6    period, and his paystub shows that he was.  Therefore,

7    plaintiff was paid the overtime wages that he bases his FLSA

8    claim on.

9            Plaintiff avers that the defendants have only

10   proffered evidence of correct payment for one pay period, and

11   that when plaintiff worked over 40 hours and was paid a bonus,

12   his overtime rate was not properly calculated.  Plaintiff,

13   however, has not provided any additional paystubs reflecting

14   that his overtime wages were incorrect in any subsequent pay

15   periods.  Additionally, plaintiff has not provided in

16   connection with his opposition to this motion, a declaration

17   stating otherwise.  The March 22nd to April 4th paystub shows

18   that plaintiff's overtime wages were properly calculated for

19   that pay period.  And Mr. Alcovitz declares that plaintiff was

20   properly compensated at a rate of 1.5 of his combined regular

21   and Hero Pay wages in his subsequent paychecks.  Plaintiff

22   offers no evidence to dispute this assertion.

23           Based on these facts, plaintiff was paid overtime

24   wages on which he premises his FLSA overtime claim.  The only

25   remaining potential injury that plaintiff could base his FLSA

1    claim on is defendant's failure to promptly pay his overtime

2    wages.  This circuit has interpreted FLSA to "require wages to

3    be paid in a timely fashion."  And I'm citing *Rogers v. City of*

4    *Troy*, 148 F.3d, 52 at 57.

5              Under the agency's non-binding interpretive bulletin,

6    "the general rule is that overtime compensation earned in a

7    particular work week must be paid on the regular payday for the

8    period in which such work week ends, when the correct amount of

9    overtime compensation cannot be determined until some time

10   after the regular pay period; however, the requirements of the

11   act will be satisfied if the employer pays the excess overtime

12   compensation as soon after the regular pay period, as is

13   applicable.  Payment may not be delayed for a period longer

14   than is reasonably necessary for the employer to compute and

15   arrange for payment of the amount due, and in no event may

16   payment be delayed beyond the next payday after such

17   computation can be made."  And I'm citing there 29CFR Section

18   778.106.

19             Typically, determining whether the prompt payment

20   requirement is met involves a fact-based inquiry.  And I'm

21   citing, for example, *Merrill Lynch v. City of New York*, 291

22   F.Supp. 3d 547 at 552, as well as *Worley v. City of New York*,

23   2020 WL 730326 at 9.  Although defendants provide reasons why

24   plaintiff's payment was delayed, I find that at this stage,

25   plaintiff has alleged a sufficient injury in fact the delayed

1    payment of overtime wages.  I, therefore, deny defendant's

2    motion to dismiss plaintiff's FLSA claim on that ground and

3    find that I have subject matter jurisdiction over plaintiff's

4    collective action claim.  I note that plaintiff's FLSA claim

5    survives only as it relates to defendant's failure to promptly

6    pay plaintiff's overtime wages.

7            Now, with regard to the New York labor law claims,

8    although the parties devote a substantial portion of their

9    papers to the Class Action Fairness Act, CAFA, and its

10   exceptions, I find I need not resolve this issue at this time

11   because I will exercise supplemental jurisdiction over

12   plaintiff's New York Labor Law claim.  Hence, as I have stated,

13   I find I have original jurisdiction over plaintiff's FLSA

14   collective action claim.  Under Section 1367(a), where a

15   district court has original jurisdiction over a claim, the

16   Court shall have supplemental jurisdiction over all other

17   claims "if they derive from a common nucleus of operative

18   fact."  And I'm citing *Shahriar v. Smith & Wollensky*, 659 F.3d

19   234 at 245.  Plaintiff argues that supplemental jurisdiction is

20   proper here because his New York Labor Law claims arise out of

21   the same nucleus of operative facts as his FLSA claim.

22   Defendants contend "plaintiff's FLSA claim involved allegations

23   that Rite Aid actually failed to properly factor in bonuses

24   into plaintiff's and the putative nationwide collective regular

25   rate for overtime wages calculations," while, "plaintiff's New

L3BLANDC

York Labor Law, Section 191 and 195 claims involve whether Rite

Aid failed to timely pay its hourly New York employees weekly

and derivatively provide them with accurate wage notices and

wage statements."  Therefore, according to defendants, the

claims do not arise from the same nucleus of operative facts.

And that's from defendant's reply on page seven.

Plaintiff brings the claims for overtime wages under

both the FLSA and New York Labor Law that stem from plaintiff's

allegation that defendants did not properly include bonus pay

and overtime calculation.  Defendants are correct that

plaintiff's remaining New York labor law claim involve whether

Rite Aid failed to timely pay New York hourly rate employees

weekly and whether Rite Aid provided proper time of higher wage

notices and wage statements.  I find that exercising

supplemental jurisdiction is proper here, as all of the claims

arise out of Rite Aid's compensation policies and practices.

And I'm citing *Shahriar*, 659 F.3d at 245 as well as *Catzin vs.*

*Thank You & Good Luck*, 899 F.3d 77 at 80.

The Second Circuit has observed that "wage and hour

cases are quotient, and federal courts are well experienced in

presiding over them, even when they involve claims under New

York Labor Law for which there is no FLSA equivalent, such as

failure to provide wage notices."  I'm citing *Catzin*, 899 F.3d

at 86.  Although defendants point to some differences in the

actions, including that the FLSA collective is nationwide while

L3BLANDC

1    the New York Labor Law is brought on behalf of New York

2    employees, I find that "those differences do not defeat the

3    exercise of supplemental jurisdiction here in light of the

4    Second Circuit's holding in *Shahriar* that a showing of common

5    compensation policies among defendants is sufficient to meet

6    the common nucleus standard."  And there I'm citing *Santana v.*

7    *Fishlegs*, 213 WL 5951438 at 7.

8            I now turn to Section 1376(c) categories under which I

9    can decline supplemental jurisdiction.  I note that even where

10   the Section 1367(c) category applies, "a district court should

11   not decline to exercise supplemental jurisdiction unless it

12   also determines that doing so would not promote economy

13   convenience, fairness and comity." I'm citing *Catzin* there, 899

14   F.3d at 85.

15           Defendants argue that because plaintiff lacks standing

16   to assert his FLSA claim, I should decline exercising

17   supplemental jurisdiction over his remaining New York Labor Law

18   claim.  Because I find that plaintiff has standing to bring his

19   FLSA claim, this argument and the 1367(c) 4 -- excuse me.

20   Because I find that plaintiff has standing to bring his FLSA

21   claim, this argument and Section 1367(c)(4) are inapplicable.

22   Additionally, defendants assert that I should not entertain

23   supplemental jurisdiction because plaintiff's New York Labor

24   Law claim raises unsettled issues of New York law.  Whether

25   there is a private right of action under New York Labor Law,

L3BLANDC

1  Section 191(a) for an employer's failure to pay workers on a

2  weekly basis.  Defendants proffer cases where New York state

3  courts and federal courts have questioned whether such a right

4  exists and have disagreed in some instances.  These citations,

5  however, demonstrates that courts within this circuit have been

6  considering this issue for quite some time and that these sorts

7  of claims are regularly before courts in this district.

8  Likewise, plaintiff points to numerous cases in which courts

9  within the Second Circuit have considered and resolved the

10  issue based in part on a recent first department case.  And

11  that's from plaintiff's brief 13 to 14.

12          Okay.  Defendants cite no case law to suggest that

13  this is the kind of novel or complex issue of state law over

14  which courts would typically decline supplemental jurisdiction.

15  Indeed, although courts have reached different results when

16  considering this issue, the issue does not seem novel or

17  particularly complex.  Defendants posit no reason why I cannot

18  perform an analysis similar to those employed by other courts

19  in this circuit to resolve the issue.  In addition, "because

20  this issue is a relatively minor aspect of the larger state

21  claim and has been previously tackled by New York and federal

22  courts, the Court will not decline jurisdiction on this

23  ground."  I'm citing *Whitehorn v. Wolfgang's Steakhouse*, 275

24  F.R.D. 193 at 198.

25          Even were it considered a novel or complex issue,

L3BLANDC

```
 1    declining jurisdiction would not be appropriate given that
 2    judicial economy and convenience would not be served by making
 3    the parties litigate the claims in separate forums.  I do not
 4    find any other circumstances that would warrant my declining
 5    supplemental jurisdiction over plaintiff's New York Labor Law
 6    claim.  The Second Circuit has observed that "the 7th, 9th and
 7    District of Columbia Circuits all have.determined that
 8    supplemental jurisdiction is appropriate over state labor law
 9    class claims in an action where the court has federal question
10    jurisdiction over FLSA claims in a collective action," and
11    found supplemental jurisdiction proper in such a scenario.  And
12    I'm citing *Shahriar* there.  659 F.3d at 248.  Accordingly, I
13    will exercise supplemental jurisdiction over plaintiff's New
14    York Labor Law claim.  Defendant's motion to dismiss
15    plaintiff's New York Labor Law claims is denied.
16          Now, with regard to personal jurisdiction.  Finally,
17    defendant's request I dismiss plaintiff's FLSA collective
18    action claim to the extent it is brought on behalf of
19    out-of-state employees who worked at out-of-state Rite Aid
20    pharmacy locations because plaintiff has not plausibly alleged
21    facts showing that I have personal jurisdiction over such
22    claims.  In *Bristol Meyers Squibb v. Superior Court of*
23    *California*, 137 Supreme Court 773, the Supreme Courts
24    considered the Fourteenth Amendment protections applicable to a
25    state court exercising specific jurisdiction over mass work
```

1    claims of out-of-state residents against an out-of-state

2    defendant.  The Supreme Court explained that while "a court

3    with general jurisdiction may hear any claim against that

4    defendant, even if all incidents underlying the claim occurred

5    in a different state.  In order for the state court to exercise

6    specific jurisdiction, the suit must arise out of or relate to

7    the defendants' contact with the forum."  And that's at 1780.

8    The Supreme Court could find its decision to "the due process

9    limits on the exercise of specific jurisdiction by a state, and

10   thereby expressly left open the question of whether the Fifth

11   Amendment imposes the same restrictions on the exercise of

12   personal jurisdiction by a federal court."  And I'm citing

13   *Pettenato v. Beacon Health*, 425 F.Supp. 3d, 264 at 275.

14           Courts are divided as to the impact of *Bristol Meyers*

15   on FLSA collective actions.  Although some courts have held

16   "*Bristol Meyers* does not apply to divest courts of personal

17   jurisdiction over the claims of out-of-state plaintiffs in FLSA

18   collective actions."  Others have held that "*Bristol Meyers*

19   applies to FLSA claims in that it divests courts of specific

20   jurisdiction over the FLSA claims of out-of-state plaintiffs

21   against out-of-state defendants."  And the first quote was from

22   *Swamy v. Title Source*, 2017 WL 5196780.  And the second quote

23   was *Chavira v. OS Restaurant*, 2019 WL 4769101 at 4.

24           Defendants urge me to follow the second line of cases,

25   and the reasoning in *Pettenato*, which applied the

L3BLANDC

```
1    Bristol-Meyers rule to a FLSA collective action.  Plaintiff

2    urges me to decline to do so or find resolution on this issue

3    -- or find resolution on this issue premature.  To date, no

4    Court of Appeals has addressed whether Bristol Meyers applies

5    to FLSA collective actions.  At this stage, I find the

6    resolution of this issue premature since plaintiff has yet to

7    even move for conditional certification of his action as a

8    collective action under the FLSA.  "In contrast to Bristol

9    Meyers, there is no actual non-forum state plaintiffs or

10   putative collective members to speak of yet in this case,

11   making defendant's motion to dismiss premature."  And I'm

12   citing Simon v. Ultimate Fitness, 2019 WL 4382204 at 5, as well

13   as Bank v. CreditGuard, 2019 WL 1316966 at 12.  Defendant's

14   phrasing, "to the extent the collective action seeks to bring

15   claims on behalf of out-of-state Rite Aid employees" confirms

16   that the issue defendants would like me to address is purely

17   hypothetical at this time.  The only plaintiff identified to

18   date is Andrews, a New York resident, who worked at Rite Aid

19   pharmacies within New York.  "Since unnamed plaintiffs are

20   merely potential collective members who may never actually be

21   joined to this action, it would be premature for a Court to

22   decide whether there is specific jurisdiction over the

23   defendants with respect to their claims."  And I'm citing there

24   Simon 2019 WL 4382204 at 4.  I will consider this issue if and

25   when plaintiff moves for certification of his FLSA collective
```

L3BLANDC

1  action.  Accordingly, defendant's motion to dismiss for lack of

2  personal jurisdiction is denied without prejudice to raising it

3  at a later stage.

4       Okay.  Let me ask:  Are there any questions with

5  regard to my decision from the plaintiff?

6       MR. SCHAFFER:  This is Brian Schaffer.  Nothing from

7  plaintiff.  Thank you, your Honor.

8       THE COURT:  All right.  Any questions from the

9  defendant, Mr. Freedberg?

10       MR. FREEDBERG:  This is Eli Freedberg.  No questions,

11  your Honor.

12       THE COURT:  All right.  Thank you very much.

13       Is there anything that we need to deal with today from

14  the plaintiff's perspective?

15       MR. SCHAFFER:  Yes.  Your Honor, I believe we should

16  discuss an initial conference under Rule 26.

17       THE COURT:  Okay.  We will issue an order with regard

18  to that, I believe.  We'll issue an order with regard to the

19  Rule 26 issue.

20       Mr. Freedberg, anything else -- I'm sorry.

21       Anything else from the plaintiff, Mr. Schaffer?

22       MR. SCHAFFER:  No, your Honor.  Thank you.

23       THE COURT:  All right.  Anything else for defendants,

24  Mr. Freedberg?

25       MR. FREEDBERG:  No further issues, your Honor.  Thank

L3BLANDC

1    you.

2            THE COURT:  Okay.  All right.  Thank you, counsel, for

3    getting on the line and for your indulgence of me taking the

4    time to read my decision.

5            We will stand adjourned.  Thank you very much and

6    everybody please stay safe.

7                              * * * * * *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25