UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------- x

NICOLE DAVIS, individually and on behalf of    :
all others similarly situated,    :
     :
     :
     Plaintiff,    :
     :
  -against-    :
     :
BANANA REPUBLIC, LLC,    :
     :
     Defendant.    :

--------------------------------------------------------- x

**REPORT AND
RECOMMENDATION**

21 Civ. 6160 (KAM) (VMS)

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Nicole Davis ("Plaintiff" or "Davis") brings this action against Defendant

Banana Republic, LLC ("Defendant" or "Banana Republic"), on behalf of herself and all other

similarly situated Hourly Workers in New York pursuant to Federal Rule of Civil Procedure 23

to remedy violations of the New York Labor Law ("NYLL"), Article 6 §§ 190 et seq.  See

Second Amended Complaint ("SAC"), ECF No. 13.  Defendant moved to dismiss the SAC

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  See ECF Nos. 20-21.

Plaintiff opposed the motion.  See ECF No. 26.  Defendant replied.  See ECF No. 22.  Plaintiff

sur-replied and filed four notices of supplemental authority.  See ECF Nos. 28, 29, 30, 33 and 34.

Defendant filed a letter responding to Plaintiff's notices of supplemental authority at ECF Nos.

29 and 30, see ECF No. 31, and Plaintiff responded to that letter.  See ECF No. 32.  The District

Court referred the motion to this Court for a report and recommendation.  For the following

reasons, this Court respectfully recommends that the District Court deny Defendant's motion.  If

the District Court adopts this report and recommendation, this Court respectfully recommends

that Defendant be directed to answer the SAC within 14 days of the District Court's adoption.

## I.  Alleged Facts[1] And Procedural History

Defendant Banana Republic is a business corporation organized and existing under the laws of Delaware with a principal executive office in San Francisco, California.  SAC, ECF No. 13 ¶¶ 11-12.  Banana Republic was and is a covered employer within the meaning of the NYLL. Id. ¶ 13.  Plaintiff has been employed at Banana Republic as an hourly employee and manual worker since August 2020.  Id. ¶ 30.  During the relevant time period, "over twenty-five percent of Plaintiff's duties were physical tasks, including but not limited to: (1) opening, moving, stacking and lifting boxes; (2) stocking shelves and clothing racks; (3) cleaning and organizing fitting rooms; (4) cleaning bathrooms; (5) folding clothes; (6) price tagging clothes and; [sic] (7) sweeping the store; (8) cleaning store windows; and (9) standing for long periods of time."  Id. ¶ 31.  Defendant compensated Plaintiff on a bi-weekly basis."  Id. ¶ 32.  Plaintiff initiated this action on behalf of herself and those similarly situated, alleging that Defendant unlawfully paid her biweekly, rather than weekly, in violation of NYLL § 191(1)(a).  Id.  ¶¶ 32-40.

Defendant moves to dismiss the SAC in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  See ECF No. 20-23.  Defendant argues that Plaintiff lacks standing to bring suit because the SAC's allegations concerning frequency of payment do not establish an actual or concrete harm.  See Def. Mem., ECF No. 21 at 4-8.  Defendant argues that, even if Plaintiff were to have standing, she fails to state a claim upon which relief can be granted, because the statutes she sues under, NYLL § 191(1)(a) and 198(1-a), do not provide a private right of action.  Id. at 8-21.  Plaintiff opposes the motion on both grounds.  See Plf. Opp., ECF No. 26.  In its reply to Plaintiff's opposition, Defendant raises a third argument: that "Banana

---

[1] The alleged facts are derived from the SAC and are deemed true only for the purposes of the motion before the Court.

Republic actually requested and received permission from the [New York State Commissioner of Labor] to pay its employees bi-weekly – a fact that the Court can properly take judicial notice of on a motion to dismiss." Def. Reply, ECF No. 22 at 4. Defendant submitted a portion of the New York Department of Labor's response to a Freedom of Information Law (FOIL) request for

> Any record(s) showing authorization or approval to pay manual workers in New York on a semimonthly or bi-weekly basis pursuant to New York Labor Law, Article 6, Sec. 191.l(a)(ii) from 1990 to 2022, for the following entities:
> - The Gap, Inc.
> - Banana Republic LLC
> - Old Navy LLC

Decl. of Nicole Zito, Ex. A, ECF No. 23-1 at 2 (ECF Pagination). The submitted portion of the FOIL response consists of correspondence dated 1993 concerning The Gap, Inc.'s requests that it be permitted to pay its employees biweekly, and the Commissioner of Labor's responses permitting it to do so. See id. at 3-10.

The parties dispute (1) whether Plaintiff has alleged a sufficient injury to establish Article III standing and subject matter jurisdiction; and (2) whether the NYLL provides a private right of action to sue under §§ 191(1)(a) and 198(1-a). For the purposes of this motion only, the parties do not dispute that Plaintiff has sufficiently alleged that she is a "manual worker" under the NYLL. See Def. Mem., ECF No. 21 at 10.

## II. Legal Standards

### a. Motion To Dismiss Standard

#### i. Rule 12(b)(1)

A claim must be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence,"

Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005), but "at the pleading stage, standing allegations need not be crafted with precise detail." Baur v. Veneman, 352 F.3d 625, 631 (2d Cir. 2003) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992)).

Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III" of the Constitution. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342, 126 S. Ct. 1854, 1861 (2006) (quoting Lujan, 504 U.S. at 560); see TransUnion LLC v. Ramirez, 594 U.S. ——, 141 S. Ct. 2190, 2203 (2021). Whether a plaintiff has Article III standing is "the threshold question in every federal case[.]" Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 2205 (1975). "The Case and Controversy Clause of Art. III is a constitutional limitation on the jurisdiction of federal courts." Orr v. Orr, 440 U.S. 268, 295, 99 S. Ct. 1102, 1120 (1979) (emphasis in original). "[S]tanding in federal court is a question of federal law, not state law." Hollingsworth v. Perry, 570 U.S. 693, 695, 133 S. Ct. 2652, 2658 (2013). "Federal law sets the parameters on what is necessary to possess Article III standing," and "state law can neither enlarge nor diminish those requirements." Fund Liquidation Holdings LLC v. Bank of Am. Corp., 991 F.3d 370, 385 (2d Cir. 2021), cert. denied, 142 S. Ct. 757 (2022). Thus, regardless of whether a plaintiff would have standing under state law to sue in state court, the plaintiff "must satisfy the standing requirements for federal court jurisdiction under Article III." Lamica v. LaPierre, No. 5:05 Civ. 964 (JFJS) (GJD), 2006 WL 3423861, at *3 (N.D.N.Y. Nov. 28, 2006).

"[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right in vacuo—is insufficient to create Article III standing." Dep't of Educ. v. Brown, No. 22-535, 2023 WL 4277209, at *6 (U.S. June 30, 2023) (quoting Summers

v. Earth Island Inst., 555 U.S. 488, 496, 129 S. Ct. 1142, 1151 (2009)).  The procedural injury

must "impair a separate concrete interest."  Lujan, 504 U.S. at 572.

　　　If a party challenges standing under Rule 12(b)(1), a court "must accept as true all

material factual allegations in the complaint," but it must not draw inferences favorable to the

party asserting jurisdiction.  See J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir.

2004).  "A challenge to subject matter jurisdiction is a challenge to the power of the court, so

when [a] defendant[ ] move[s] to dismiss under both Rules 12(b)(1) and 12(b)(6), the court must

address the 12(b)(1) motion first."  Grauman v. Equifax Info. Servs., LLC, 549 F. Supp. 3d 285,

289 (E.D.N.Y. 2021).

### ii.  Rule 12(b)(6)

　　　Assuming subject matter jurisdiction has been established, in order to survive a Rule

12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct.

1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955,

1974 (2007)).  This requirement is satisfied when the factual content in the complaint "allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Id. (citation omitted).  This "plausibility standard is not akin to a probability requirement, but it

asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (internal

quotation marks omitted).  When resolving a Rule 12(b)(6) motion, a court "must accept as true

all [factual statements alleged] in the complaint and draw all reasonable inferences in favor of

the nonmoving party."  Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517

F.3d 104, 115 (2d Cir. 2008) (quoting Gorman v. Consol. Edison Corp., 488 F.3d 586, 591-92

(2d Cir. 2007)).

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" Leonard F. v. Israel Disc. Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999) (quoting Allen v. WestPoint–Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991)). Under Federal Rule of Evidence 201, the Court, in reviewing a motion to dismiss, "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)." Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998).

"[W]here documents must be obtained through a FOIA request (or state equivalent) they cannot be deemed to contain facts that are readily determined." 105 Mt. Kisco Assocs. LLC v. Carozza, No. 15 Civ. 5346 (NSR), 2019 WL 6998008, at *11 (S.D.N.Y. Dec. 20, 2019) (emphasis in original); see Fahs Const. Grp., Inc. v. Gray, No. 3:10 Civ. 0129 (GTS) (DEP), 2012 WL 2873532, at *4 (N.D.N.Y. July 12, 2012), aff'd, 725 F.3d 289 (2d Cir. 2013) (declining to take judicial notice of records "not prepared for review for the general public and [that] could be obtained only by a time-consuming response to a FOIL request"). Thus, "the practice of courts in this Circuit is not to take notice of documents where they 'must be obtained through a [Freedom of Information Act] request (or state equivalent),'" which "includes documents like agency letters." Rodrigue v. Lowe's Home Centers, LLC, No. 20 Civ. 1127 (RPK) (RLM), 2021

WL 3848268, at *4 (E.D.N.Y. Aug. 27, 2021) (citing Carozza, 2019 WL 6998008, at *11, and

Casey v. Odwalla, Inc., 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018)).

### b. NYLL §§ 191 And 198

NYLL § 191 provides that "[a] manual worker shall be paid weekly and not later than

seven calendar days after the end of the week in which the wages are earned."  NYLL

§ 191(1)(a)(i).  The Commissioner may authorize biweekly payments if the employer has

"employed an average of one thousand or more persons" in New York for the past three years, or

has employed an average of one thousand or more persons in New York for the preceded year,

and has "furnishe[d] satisfactory proof . . . of its continuing ability to meet its payroll

responsibilities."  NYLL § 191(1)(a)(ii).  NYLL § 198 provides,

> In any action instituted in the courts upon a wage claim by an employee or the
> commissioner in which the employee prevails, the court shall allow such
> employee to recover the full amount of any underpayment, all reasonable
> attorney's fees, prejudgment interest as required under the civil practice law and
> rules, and, unless the employer proves a good faith basis to believe that its
> underpayment of wages was in compliance with the law, an additional amount as
> liquidated damages equal to one hundred percent of the total amount of the wages
> found to be due, except such liquidated damages may be up to three hundred
> percent of the total amount of the wages found to be due for a willful violation of
> section one hundred ninety-four of this article.

NYLL § 198(1-a).

### i. Standing Under NYLL § 191

A plaintiff who brings claims in federal court for violations of statutory wage

requirements under the NYLL must have Article III standing[2] in order to establish subject matter

---

[2] Defendant does not argue that Plaintiff would lack standing under New York law to bring her
NYLL claims in state court.  "The requirements for standing under New York law . . . are similar
to the requirements under Article III, including the requirement of an 'injury in fact.'"  Petrohawk
Energy Corp. v. L. Debenture Tr. Co. of New York, No. 06 Civ. 9404 DLC, 2007 WL 211096, at
*2 n.2 (S.D.N.Y. Jan. 29, 2007) (citing Caprer v. Nussbaum, 825 N.Y.S.2d 55, 62-63 (2d Dep't

jurisdiction.  Chen v. Lilis 200 W. 57th Corp., No. 19 Civ. 7654 (VEC), 2023 WL 2388728, at

*8 (S.D.N.Y. Mar. 7, 2023) (holding that the plaintiff lacked standing "because he has not

established a triable issue of fact as to any downstream consequences from failing to receive

certain information regarding his wages as required by the NYLL.").

In order to establish Article III standing, a plaintiff must plead three elements: first, that

the plaintiff suffered an "injury in fact," that is, "an invasion of a legally protected interest which

is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical";

second, that there is "a causal connection between the injury and the conduct complained of," in

other words, an injury that is "fairly traceable to the challenged action of the defendant, and not

the result of the independent action of some third party not before the court"; and third, that the

injury is likely to be "redressed by a favorable decision."  Lujan, 504 U.S. at 560-61 (internal

quotation marks omitted).  "[A] plaintiff has standing to bring a claim for monetary damages

following a statutory violation only when the plaintiff can show a current or past harm beyond

the statutory violation itself."  Harty v. W. Point Realty, Inc., 28 F.4th 435, 443 (2d Cir. 2022)

(citing TransUnion LLC v. Ramirez, 141 S. Ct. at 2204-07 (2021)).

Although neither the Second Circuit nor the Supreme Court has directly addressed the

issue, see Porsch v. LLR, Inc., 380 F. Supp. 3d 418, 425 (S.D.N.Y. 2019), courts "have

commonly held that the 'temporary deprivation of money to which a plaintiff has a right

constitutes a sufficient injury in fact to establish Article III standing.'"  Harris v. Old Navy, LLC,

---

2006)).  New York courts require a litigant to "have something truly at stake in a genuine
controversy."  Saratoga Cnty. Chamber of Com., Inc. v. Pataki, 100 N.Y.2d 801, 812, 798
N.E.2d 1047, 1052 (2003).  "New York standing law is no stricter than Article III . . . "[t]hus, if
there is Article III standing, there is also standing under New York law."  Kofinas v. Fifty-Five
Corp., No. 20 Civ. 7500 (JSR), 2021 WL 603294, at *4 (S.D.N.Y. Feb. 16, 2021).

No. 21 Civ. 9946 (GHW) (GWG), 2022 WL 16941712, at *3 (S.D.N.Y. Nov. 15, 2022) (quoting Porsch, 380 F. Supp. 3d at 424, and collecting cases), report & recommendation adopted, 2023 WL 2139688 (S.D.N.Y. Feb. 20, 2023); see Van v. LLR, Inc., 962 F.3d 1160, 1161 (9th Cir. 2020); MSPA Claims 1, LLC v. Tenet Fla., Inc., 918 F.3d 1312, 1318 (11th Cir. 2019); Dieffenbach v. Barnes & Noble, Inc., 887 F.3d 826, 828 (7th Cir. 2018). More specifically, "late payment of wages can constitute a concrete harm sufficient to confer standing on a plaintiff who seeks relief under Sections 191 and 198 of the NYLL." Rosario v. Icon Burger Acquisition LLC, No. 21 Civ. 4313 (JS) (ST), 2022 WL 198503, at *3 (E.D.N.Y. Jan. 21, 2022). "[T]he loss of the time value of the money owed to plaintiff [due to a violation of § 191] is not a harm that might occur, but one that has occurred; it is not a harm that might materialize, but one that has materialized." Levy v. Endeavor Air Inc., No. 21 Civ. 4387 (ENV) (JRC), 2022 WL 16645829, at *4 (E.D.N.Y. Nov. 1, 2022); see Bueno v. Buzinover, No. 22 Civ. 2216 (PAE) (KHP), 2023 WL 2387113, at *3 (S.D.N.Y. Mar. 7, 2023) (declining to adopt portion of report and recommendation that recommended dismissal of claim brought under NYLL § 191 for lack of standing, reasoning that the "temporary deprivation of wages results in the concrete injury of the loss of the time value of money"). In failing to timely pay wages, an employer has deprived an employee of wages owing for the entire late period; that an employer has mitigated the harm with a biweekly wage payment does not mean that the initial deprivation did not occur or cause the employee harm.

Additional allegations beyond the temporary deprivation of money itself are not required in order to demonstrate an injury. Several courts in this Circuit have rejected arguments that plaintiffs must plead specific allegations about "financial strategies" or "investment practices" in order to show a concrete harm under NYLL § 191. See Rankine v. Levi Strauss & Co., No. 22

9

Civ. 3362 (LTS), 2023 WL 3582323, at *3 (S.D.N.Y. May 22, 2023) (collecting cases); Gillett v.

Zara USA, Inc., No. 20 Civ. 3734 (KPF), 2022 WL 3285275, at *6 (S.D.N.Y. Aug. 10, 2022)

(holding that the plaintiff alleged a concrete harm when defendants withheld his wages for one

week in violation of the NYLL even where the plaintiff did not offer "additional facts about how

he would have used his wages if he had received them in a timely fashion"); Espinal v. Sephora

USA, Inc., No. 22 Civ. 3034 (PAE) (GWG), 2022 WL 16973328, at *4 (S.D.N.Y. Nov. 16,

2022) ("although plaintiffs have not identified specific interest-bearing accounts in which they

would have invested their weekly earnings or articulated specific purchases they would have

made rather than foregone had their pay been timely, at this stage it is enough that plaintiffs have

pled injury through the allegation that they were denied the ability to 'invest, earn interest on,

otherwise use' the money from the wages they were owed"), report & recommendation adopted,

2023 WL 2136392 (S.D.N.Y. Feb. 21, 2023).

### ii. Private Right Of Action Under NYLL § 191

Defendant argues that there is no private right of action for individuals to sue for a

violation of NYLL § 191, and that cases holding otherwise were wrongly decided. Plaintiff

maintains that a private right of action exists. Whether there is a private right of action under

NYLL § 191 is a question of state law. In applying state law, federal courts "look to the state's

decisional law, as well as to its constitution and statutes." Chufen Chen v. Dunkin' Brands, Inc.,

954 F.3d 492, 497 (2d Cir. 2020) (quoting In re Thelen LLP, 736 F.3d 213, 219 (2d Cir. 2013)).

When state law is unsettled, "a federal court must 'predict how the state's highest court would

resolve the uncertainty or ambiguity.'" Levy, 2022 WL 16645829, at *5 (quoting Chufen Chen,

954 F.3d at 499); see Phansalkar v. Andersen Weinroth & Co., 344 F.3d 184, 199 (2d Cir. 2003)

("Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal

courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity.") (quotation marks omitted).  In conducting this analysis, federal courts are "bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." V.S. v. Muhammad, 595 F.3d 426, 432 (2d Cir. 2010); see DiBella v. Hopkins, 403 F.3d 102, 112 (2d Cir. 2005) ("Although we are not strictly bound by state intermediate appellate courts, rulings from such courts are a basis for 'ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" (quoting West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237, 61 S. Ct. 179, 183 (1940))); Pahuta v. Massey-Ferguson, Inc., 170 F.3d 125, 134 (2d Cir. 1999); Grand Light & Supply Co. v. Honeywell, Inc., 771 F.2d 672, 678 (2d Cir. 1985).  Where state law is not unsettled, however, federal courts need not predict how state's highest court would decide.  See Mabe v. Wal-Mart Assocs., Inc., No. 20 Civ. 591 (TJM), 2022 WL 874311, at *3 (N.D.N.Y. Mar. 24, 2022) (finding "no apparent reason to determine how the New York State Court of Appeals would decide" where "the case authority directly addressing the issue . . . is not unsettled").

Most federal courts applying the prevailing state law to determine whether a private right of action exists under NYLL § 191 have looked to the First Department's decision in Vega v. CM & Assocs. Constr. Mgmt., LLC, 175 A.D.3d 1144, 1146, 107 N.Y.S.3d 286, 288 (1st Dep't 2019).  See Rankine, 2023 WL 3582323, at *6; Georgiou v. Harmon Stores, Inc., No. 22 Civ. 2861 (BMC), 2023 WL 112805, at *6 (E.D.N.Y. Jan. 5, 2023); Rath v. Jo-Ann Stores, LLC, No. 21 Civ. 791S, 2022 WL 17324842, at *9 (W.D.N.Y. Nov. 29, 2022); Espinal, 2022 WL

16973328, at *6; <u>Harris</u>, 2022 WL 16941712, at *6; <u>Levy</u>, 2022 WL 16645829, at *5; <u>Gillett</u>, 2022 WL 3285275, at *1;  <u>Mabe</u>, 2022 WL 874311, at *3.

In <u>Vega</u>, the First Department held that, although § 191 itself does not expressly provide a mechanism of enforcement, "Labor Law § 198(1-a) expressly provides a private right of action for a violation of Labor Law § 191," <u>Vega</u>, 175 A.D.3d at 1146, including the weekly wage requirement for manual workers.  The <u>Vega</u> Court held that an employee may seek liquidated damages for the untimely payment of wages, even if the wages are no longer past due.  <u>See id.</u> at 1145-46.  It held that "[t]he purpose of section 198(1-a) is 'enhancing enforcement of the Labor Law's substantive wage enforcement provisions,'" including violations of Article 6.  <u>Id.</u> at 1145.  Under § 198(1-a), an employee may institute an action in court, and "the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest."  NYLL § 198.  <u>Vega</u> held that the term "underpayment" in § 198(1-a) "encompasses the instances where an employer violates the frequency requirements of section 191(1)(a) but pays all wages due before the commencement of an action."  <u>Id.</u> at 1145.  The <u>Vega</u> Court further held that, even if NYLL § 198 did not expressly provide a private right of action for enforcing NYLL § 191, there is an implied right of action in § 191, because "plaintiff is one of the class for whose particular benefit the statute was enacted, the recognition of a private right of action would promote the legislative purpose of the statute and the creation of such a right would be consistent with the legislative scheme."  <u>Vega</u>, 175 A.D.3d at 1146.

Following <u>Vega</u>, other New York State courts have applied that case to support recognition of the express private right of action.[3]  <u>See, e.g.</u>, <u>Phillips v. Max Finkelstein, Inc.</u>, 73

---

[3] One post-<u>Vega</u> New York Supreme Court case held that NYLL § 198(1-a) does not provide an express private right of action for a frequency of pay violation of NYLL § 191(1)(a)(i), but that

Misc. 3d 1, 4 (App. Term. 2d Dep't 2021) (following <u>Vega</u> on stare decisis principles); <u>Weber v. PX, Inc.</u>, No. 506671/21, 2021 WL 4991387, at *3 (N.Y. Sup. Ct. Oct. 25, 2021) (following <u>Phillips</u>). There are no published post-<u>Vega</u> Appellate Division decisions departing from its finding of an express private right of action. <u>See</u> <u>Mabe</u>, 2022 WL 874311, at *3 (noting that "New York's appellate divisions are not divided as to the application of <u>Vega</u> to [frequency-of-pay claims]").

Defendant relies on <u>Konkur v. Utica Acad. of Sci. Charter Sch.</u>, 38 N.Y.3d 38, 41 (2022). In <u>Konkur</u>, the New York Court of Appeals examined whether an implied right of action exists to enforce a different section of the Labor Law, NYLL § 198-b. That section of the NYLL prohibits employers from requiring employees to pay kickbacks out of their paychecks, but it does not expressly provide for a private right of action. The <u>Konkur</u> Court found that there is no implied private right of action to enforce the statute, noting that "the legislature chose to provide for it in other provisions in this statutory scheme, but not for [§ 198-b]." <u>Konkur</u>, 38 N.Y.3d 38 at 44.

Courts in this Circuit have considered and rejected the argument that <u>Konkur</u> provides sufficient evidence that the Court of Appeals would depart from <u>Vega</u>'s holding as to the express right of action. <u>See, e.g.</u>, <u>Rankine</u>, 2023 WL 3582323, at *5 (collecting cases); <u>Georgiou</u>, 2023 WL 112805, at *6 ("<u>Konkur</u> does not rise to the level of "persuasive evidence" that the Court of Appeals would reject <u>Vega</u>"); <u>Harris</u>, 2022 WL 16941712, at *10 (noting that <u>Konkur</u> addressed only an implied right of action and stating that "[a]lthough the reasoning of <u>Konkur</u> does echo

---

case appears to rely only on pre-<u>Vega</u> cases. <u>See</u> <u>Grant v. Global Aircraft Dispatch, Inc.</u>, No. 720074/2019, 2021 WL 6777500, at *3 (N.Y. Sup. Ct. Apr. 20, 2021), <u>appeal pending</u>, 2021-03202 (2d Dep't).

issues raised here, we cannot say that it provides the level of 'persuasive data' that we need to conclude that the Court of Appeals would reject the result in <u>Vega</u>" (quoting <u>DiBella</u>, 403 F.3d at 112)); <u>Espinal</u>, 2022 WL 16973328, at *9 (same).

In the absence of any Appellate Division or Court of Appeals case departing from <u>Vega</u>'s finding of an express right of action under §§ 191 and 198(1-a), federal courts have uniformly adopted <u>Vega</u>'s holding as to that right.  "[S]ince <u>Vega</u>, every court in this Circuit to consider that decision has followed its construction of the New York Labor Law."  <u>Levy</u>, 2022 WL 16645829, at *5 (collecting cases); <u>see</u> <u>Georgiou</u>, 2023 WL 112805, at *6 ("follow[ing] <u>Vega</u> to hold that plaintiff has a private right of action under §§ 191 and 198(1-a), at least pending further instruction from the New York State courts," but "finding that <u>Vega</u>'s alternative holding that there is an implied right of action has been abrogated by <u>Konkur</u>); <u>Harris</u>, 2023 WL 2139688, at *1 (noting that, since <u>Vega</u>, all federal courts have found a private right of action under §§ 191 and 198(1-a),); <u>Rath</u>, 2022 WL 17324842, at *9 (finding "no contrary data or authority to suggest the New York Court of Appeals would decide [contrary to <u>Vega</u>], and "observ[ing] that federal courts after <u>Vega</u> uniformly follow suit"); <u>Gillett</u>, 2022 WL 3285275, at *11 (not finding a persuasive reason to depart from the "myriad decisions in this Circuit that have followed <u>Vega</u> in finding a private right of action to enforce Section 191"); <u>Mabe</u>, 2022 WL 874311, at *3 ("the case authority directly addressing the issue . . . is not unsettled, and therefore there appears to be no apparent reason to determine how the New York State Court of Appeals would decide the issues addressed in <u>Vega</u>").

### III. Application

#### a. Standing

Defendant argues that the SAC must be dismissed pursuant to Rule 12(b)(1) for lack of Article III standing because Plaintiff has failed to plausibly allege that Defendant's violation of the NYLL caused her a concrete harm.  See Def. Mem., ECF No. 21 at 4-8.  Defendant argues that a plaintiff seeking statutory penalties "for a defendant's alleged violation of a timing requirement in a New York statute (as [Plaintiff] does with Section 191 here), must demonstrate how the defendant's lateness actually and concretely harmed her" and that Plaintiff has not met that burden here.  Id. at 5.

This Court disagrees.  In her SAC, Plaintiff alleges that Defendant underpaid her by paying her biweekly rather than weekly, in violation of NYLL § 191, depriving her of the time value of her money.  See SAC, ECF No. 13 ¶¶ 32-35.  This allegation is sufficient, at the pleading stage, to establish a concrete injury-in-fact.  See Section II(b), supra; Georgiou, 2023 WL 112805, at *2 ("Plaintiff need not identify a specific forfeited investment opportunity or interest-bearing account. Not having money you're supposed to have means that the time value of money has decreased. That is sufficient to establish an actual and concrete injury."); Caul v. Petco Animal Supplies, Inc., No. 20 Civ. 3534, 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021) ("[T]he late payment of wages is a concrete harm.").  Although she was not required to do so, Plaintiff further alleges that she was "unable to invest, save[] or purchase utilizing the wages she earned and was owed" during the periods of underpayment.  See SAC, ECF No. 13 ¶¶ 36-37.  Plaintiff's alleged injury is not hypothetical, but it is instead a realized loss of the time value of her money.

Defendant argues that <u>Maddox v. Bank of New York Mellon Trust Co., N.A.,</u>19 F.4th 58 (2d Cir. 2021), weighs against a finding that alleged deprivation of time value of money is sufficient to confer standing.  In <u>Maddox</u>, the Second Circuit analyzed the plaintiffs' standing to bring suit arising from a delayed filing of a mortgage satisfaction, for which there was a $1,500 statutory penalty.  The plaintiffs contended "that the Bank's delay adversely affected their credit during that time, making it difficult to obtain financing had they needed it in an emergency or for a new home." <u>Id.</u> at 65.  The plaintiffs did not allege that the purported risk had materialized, for example, that they had sought and been denied financing during the delay period.  <u>Id.</u>  The <u>Maddox</u> Court held that the plaintiffs lacked standing, noting that although various concrete harms could have flowed from the delayed recording of a discharge of mortgage, the plaintiffs failed to allege that they suffered such harms due to the bank's alleged violation.  <u>See id.</u> at 64-66.  Although <u>Maddox</u> confirmed that plaintiffs must allege a concrete harm arising from a statutorily prohibited action, "nothing in [<u>Maddox</u>] undermines the notion that the lost time value of money could be an injury that gives rise to standing."  <u>Harris</u>, 2022 WL 16941712, at *4.  The harm alleged in <u>Maddox</u> was "at best hypothetical."  <u>See</u> <u>Levy</u>, 2022 WL 16645829, at *4.  This case is thus distinguishable from <u>Maddox</u>, in which the plaintiffs' hypothetical injury had not yet, and may never have, materialized.

Defendant relies on <u>Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury</u>, 773 F.3d 243, 245 (11th Cir. 2014), to argue that Plaintiff was required to specifically demand lost interest or to allege injuries that have state law analogs.  <u>See</u> Def. Mem., ECF No. 21 at 8.  In <u>Kawa</u>, the plaintiff alleged that it had unnecessarily spent time and money determining how to comply with the Affordable Care Act's employer mandate, before the Treasury announced that enforcement would be delayed during a transition relief period.  <u>Kawa</u>, 773 F.3d at 245.  The

plaintiff sought a declaratory judgment and injunction setting aside the Treasury's transition relief.  Id.  It did not "seek the return of the money that Kawa paid to research its upcoming obligations under the ACA . . . [or] seek the return of any money attributable to the monetary value of the time that Kawa spent in this endeavor."  Id.  The Eleventh Circuit held that the plaintiff's "bare allegation that it has lost the 'value of the time and resources it expended in 2013' sets out an injury that is too abstract and indefinite to confer Article III standing."  Id. at 246.  Kawa is distinguishable from the present case in that the Kawa plaintiff sought to value the plaintiff's time as having a particular monetary value—the money value of time—in contrast to Plaintiff, who seeks damages based on the money that her timely paid wages were worth and the value it lost —the value of money over time.

In any event, as one court in this district pointed out, after Kawa, "the Eleventh Circuit subsequently recognized that the lost use of money can in fact support standing."  Caul v. Petco Animal Supplies, Inc., No. 20 Civ. 3534 (RPK) (SJB), 2021 WL 6805889, at *2 (E.D.N.Y. Dec. 22, 2021) (citing MSPA Claims 1, LLC v. Tenet Florida, 918 F.3d 1312, 318 (11th Cir. 2019)).

This Court is more persuaded by courts in this Circuit finding that alleged temporary loss of time value of money is sufficient to allege an injury in fact, and that additional allegations concerning lost interest or other damages would be unnecessary.  See, e.g., Bueno, 2023 WL 2387113; Georgiou, 2023 WL 112805, at *2 Harris, 2022 WL 16941712, at *4; Levy, 2022 WL 16645829, at *4; Gillett, 2022 WL 3285275 at *5-7.

This Court respectfully recommends that the District Court find that Plaintiff's allegations are sufficient to establish Article III standing.

### b.  Private Right Of Action Under NYLL § 191

Defendant argues that the SAC should be dismissed under Rule 12(b)(6) for failure to state a claim because NYLL § 191 does not provide an express or implied private right of action. See Def. Mem., ECF No. 21 at 8-21.  Although Defendant acknowledges that the First Department in Vega held that there is both an express and implied private right of action under NYLL §§ 191 and 198(1-a), Defendant argues that Vega is "not controlling, . . . wrongly decided, and . . . not entitled to deference from this court."  Id. at 18.  Plaintiff responds that Vega controls, and to disregard it runs "contrary to the clear holdings of the Supreme Court and Second Circuit."  See Plf. Mem., ECF No. 26 at 18 (citing DiBella, 403 F.3d at 112; Am. Tel. & Tel. Co., 311 U.S. at 237).  Defendant argues that the Vega Court wrongly held that an express private right of action exists under § 198(1-a) and relied on the incorrect conclusions that (1) remedies under that section apply to § 191, and (2) that an untimely payment of wages constitutes an underpayment of wages.  See Def. Mem., ECF No. 21 at 18.

Absent ambiguity in New York case law as to whether an express private right of action exists, this Court cannot predict that the Court of Appeals would likely hold to the contrary of Vega.  See Mabe, 2022 WL 874311, at *3.  Even assuming, arguendo, that there is ambiguity as to the existence of a private right of action under § 191, this Court "would have to be convinced that the highest court of the state is likely to reject Vega's reasoning."  Rankine, 2023 WL 3582323, at *5; see Muhammad, 595 F.3d at 432.  Defendant has not presented a convincing argument that the Court of Appeals would do so.  This Court views the Vega Court's textual analysis of NYLL §§ 191 and 198(1-a) as a reasonable interpretation of the statutes, if not the only viable one.  As the Vega Court discussed, see Section II(b)(ii), supra, "the plain language of [§ 198] indicates that individuals may bring suit for any 'wage claim' against an employer," and

§ 198 applies to Article 6, of which § 191 is a part. <u>Vega</u>, 175 A.D.3d at 1145. Even facing two reasonable interpretations, this Court defers to the holding in <u>Vega</u>. <u>See</u> <u>Harris</u>, 2022 WL 16941712, at *7 (questioning whether the legislature meant to include late payments under the umbrella of "underpayments," but deferring to the <u>Vega</u> Court's conclusion that it did); <u>Scott v. Whole Foods Mkt. Grp., Inc.</u>, No. 18 Civ. 0086 (SJF) (AKT), 2020 WL 9814095, at *3 (E.D.N.Y. Feb. 5, 2020) ("In the absence of a Court of Appeals case directly on point, the Appellate Division's decision in <u>Vega</u> remains entitled to persuasive consideration."). Defendant's argument that <u>Vega</u> incorrectly construed a delayed payment as an "underpayment" under § 198(1-a) does not overcome the weight that a federal court must give to state intermediate courts in the absence of binding authority or clear error.

This Court acknowledges that other courts in this District have expressed some doubt as to whether, were they deciding the issue in a vacuum, they would same to the same conclusion as the <u>Vega</u> Court as to the private right of action. <u>See</u> <u>Harris</u>, 2022 WL 16941712, at *7; <u>Georgiou</u>, 2023 WL 112805, at *6. Nevertheless, those courts did not find sufficient evidence that the Court of Appeals would disagree with <u>Vega</u>, and neither does this Court. Although Defendant may have a reasonable argument that "underpayment" was not meant to encompass delayed payments under the NYLL, the proposed interpretation is not so obviously erroneous that the Court could predict that the New York State Court of Appeals would disagree with <u>Vega</u>.

Defendant also challenges the <u>Vega</u> Court's finding of an implied private right of action under §§ 191 and 198(1-a). Def. Mem., ECF No. 21 at 9-18. Because the <u>Vega</u> Court held that § 198(1-a) provides an explicit private right of action, however, an assessment as to whether the <u>Vega</u> Court was correct in assessing the factors to find an implicit right of action is not necessary

19

here. See Rankine, 2023 WL 3582323, at *5 ("even if the Court of Appeals were to agree . . . that an express private right of action is required, Vega's conclusion that a late payment claim meets the express statutory underpayment claim elements could survive").

Defendant's reliance on Konkur fails to persuade otherwise. As discussed, supra, Konkur focused on an implied right, not an express one. This Court agrees with the line of cases, supra, holding that Konkur does not provide sufficient evidence that New York's highest court would hold differently than the Vega Court as to the express right. Vega found an express private right of action based on statutory text, which is the most direct form of analysis available to support its conclusions. This holding relies less on case law and statutory purpose than its implied right of action holding and is open to somewhat less uncertainty, such as whether the statute was enacted for a class of which plaintiff is a part, the legislative purpose of the statute, and whether the implied right would be consistent with the legislative scheme. See Vega, 175 A.D.3d at 1146. Unlike in Konkur, in which it was undisputed that there was no express right, it is possible here to rely only on the first aspect of Vega's holding. As Defendant has not explained why the Vega textual analysis is incorrect, the Court does not have data to support the position that the Court of Appeals would disagree with Vega as to the express private right of action.

This Court respectfully recommends that the District Court conclude that under Vega, the NYLL provides an express private right of action to enforce the late payment of full wages. See Levy, 2022 WL 16645829, at *5.

## IV. Defendant's Alleged Exemption From § 191

In reply to Plaintiff's opposition, Defendant newly raises the argument that the New York Commissioner of Labor authorized Banana Republic to pay its employees biweekly, thus exempting it from § 191(1)(a)'s pay frequency requirement. See Def. Reply, ECF No. 22 at 4.

20

Defendant submitted correspondence, including letters from the Commissioner dated 1993, purportedly supporting this contention.  See Decl. of Nicole Zito, Ex. A, ECF No. 23-1 at 3-10 (ECF Pagination).

First, "[t]he Second Circuit has clearly stated that arguments raised for the first time in reply papers or thereafter are properly ignored."  Colon v. City of New York, No. 11 Civ. 0173 (MKB), 2014 WL 1338730, at *9 (E.D.N.Y. Apr. 2, 2014) (citing, inter alia, Watson v. Geithner, 355 F. App'x 482, 483 (2d Cir. 2009); ABN Amro Verzekeringen BV v. Geologistics Americas, Inc., 485 F.3d 85, 97 n.12 (2d Cir. 2007); and Clubside, Inc. v. Valentin, 468 F.3d 144, 159 n.5 (2d Cir. 2006)).  The Court therefore respectfully recommends that the District Court deny Defendant's request on this basis.

As to the merits of the argument about the Commissioner's letters on the current record, Defendant does not provide sufficient support for the Court to determine whether the exemption letters apply here.  Defendant does not argue that the letters are integral to the complaint, but it suggests the Court may take judicial notice of the letters as "governmental records."  Id. at 4-5. This Court respectfully recommends that the District Court decline to take judicial notice of the exemption letters.  On this record, as discussed, agency records obtained via FOIA or similar state-law mechanisms are not "readily available" public records, and the practice in this Circuit is to refrain from taking judicial notice of such documents, including the type of exemption letters at issue here.  See Rodrigue, 2021 WL 3848268, at *4 (declining at motion to dismiss stage to take notice of letter from the New York Commissioner of Labor authorizing the defendant employer to pay its manual workers on a biweekly basis).

Even if the Court were to take judicial notice of the letters here, they would not warrant dismissal of the SAC at this stage because of evidentiary gaps in the present record.  Defendant

does not establish that The Gap's authorization to pay its manual workers on a biweekly basis is still in effect, or that the letters cover Banana Republic, a company only owned by The Gap but separately incorporated. This Court respectfully recommends that the District Court reject Defendant's argument that the exemption letters warrant dismissal under Rule 12(b)(6).

## V. Conclusion

For the foregoing reasons, this Court respectfully recommends that the District Court deny Defendant's motion to dismiss. If the District Court adopts this report and recommendation, this Court respectfully recommends that Defendant be directed to answer the SAC within 14 days of the District Court's adoption.

## VI. Objections

This report and recommendation will be filed electronically. Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge prior to the expiration of the fourteen-day period for filing objections. Failure to file objections within fourteen days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals. See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022) (stating that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a

magistrate's recommended decision, it waives any right to further review of that decision")

(internal citation & quotations omitted).

Dated: Brooklyn, New York
        July 31, 2023

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge